UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YUSUF ALI ALI, et al.,

        Petitioner(s),

  v.

ALBERTO GONZALES, et al.,

        Respondent(s).

NO. C02-2304P

ORDER ON MOTION FOR EAJA AWARD OF ATTORNEY FEES

This motion comes before the Court on remand from the Ninth Circuit. All the substantive legal issues in the matter have been resolved, and the question remaining to be determined is whether Petitioners' counsel are entitled to an award of attorney fees under the Equal Access to Justice Act ("EAJA"). The case was remanded to permit this Court to "revisit prevailing party status" (Memorandum Opinion, No. 03-35620, p. 6), and answer the question of whether Petitioners could still be found to be prevailing parties for EAJA purposes despite having failed to achieve all the relief they sought. For the reasons cited below, the Court finds that Petitioners are prevailing parties in this action and are entitled to attorneys fees commensurate with the relief which they achieved. Those fees shall be made payable to Perkins Coie LLC, the firm that provided Petitioners' legal representation on a pro bono basis.

It is the further finding of this Court that Respondents submitted an overlength responsive brief (per Local Rule 7(e)(4)) and failed to request permission to do so until Petitioners objected to the additional pages in their reply. The Court will GRANT Respondents' Motion for Leave to File an Overlength Brief (Dkt. No. 176) and consider the arguments contained in the extra pages, and Respondents will be sanctioned $1,000, payable to the Clerk of the Court, for the violation of the Local Rules of this district.

**ORDER ON MOTION RE:**
**PREVAILING PARTY STATUS - 1**

**Background**

Prior to the initiation of this lawsuit, final orders of removal to Somalia had been issued to the four individual petitioners – Yusuf Ali Ali, Mohamed Hussein Hundiye, Mohamed Aweys and Gama Kalif Mohamud. See Ali v. Ashcroft, 213 F.R.D. 390, 397-98 (W.D. Wash. 2003) (Dkt. No. 44). Each of the petitioners had been detained for many months while the Government tried to achieve their removal, and were released from post-removal-order detention only in the wake of Zadvydas v. Davis, 533 U.S. 678 (2001) (which holds that an alien may not be held in confinement once it is determined that there is no likelihood of removal in the reasonably foreseeable future. Id. at 701.).

Petitioner Mohamud was re-detained in July 2002 upon revocation of his order of supervision. In November 2002, Petitioners Ali, Hundiye and Aweys were re-detained "because the local district directors office was informed that plans were underway for [their] imminent removal to Somalia." Ali, 213 F.R.D. at 397-98. All the petitioners were informed that they would soon be removed to Somalia. Id.

Shortly after their re-detention, the petitioners filed a habeas petition with the Court requesting that their removal to Somalia be enjoined on the ground that it would violate 8 U.S.C. § 1231(b)(2) because Somalia had no government which could accept deportees. Id. The Court issued a stay preventing their removal on the day Petitioners filed their petition. On December 4, 2002, Petitioners filed an amended petition seeking certification of a nation-wide class entitled to the requested injunctive relief, and this Court extended the stay to a class of all individuals with final orders of removal to Somalia. Id.

On December 8, 2002, the Court granted the TRO was granted and certified a nation-wide class of aliens. On January 13, 2003, a hearing was held on the merits of Petitioners' request for a preliminary injunction. Respondents did not contest Petitioners' evidence regarding the threat of torture or death if they were removed to Somalia. Instead, the Government argued that (1) this Court

**ORDER ON MOTION RE:**
**PREVAILING PARTY STATUS - 2**

had no jurisdiction to hear the case; (2) the Petitioners had failed to exhaust their administrative remedies; (3) 8 U.S.C. § 1231(b)(2) allowed the removals to Somalia without the necessity of government acceptance; and (4) in any event, class relief was not available. Id. at 397-405.

The Court granted Petitioners' request for a class-wide injunction preventing the removals to Somalia. Id. at 388-411. In response to the Court's request for further briefing on the effect of the injunction on the pending litigation, the Government conceded that the injunction should be converted to a permanent injunction. Id. at 405. A permanent injunction was entered on January 17, 2003. Id.; *see also* May 28, 2003 Judgment (Dkt. Nos. 58 and 59).

On the ground that there was no likelihood that Petitioners would be removed in the reasonably foreseeable future, the Court also ordered that three of the petitioners (Ali, Hundiye and Aweys) be released from detention pursuant to Zadvydas. (Petitioner Mohamud had a separate habeas proceeding pending before Judge Barbara Rothstein of this district – C02-1686BJR – and was thereafter ordered released by Judge Rothstein.)

On May 27, 2003, the Eighth Circuit held that the United States immigration authorities did not have to obtain the acceptance of the removal country's government before the United States could repatriate an alien. *See* Jama v. INS, 329 F.3d 630 (8th Cir. 2003) (construing 8 U.S.C. § 1231(b)(2)).

The Government appealed this Court's order (Notice of Appeal; Dkt. No 73). On September 17, 2003, the Ninth Circuit affirmed the entry of the class injunction and the order of release from detention. Ali v. Ashcroft, 346 F.3d 873 (9th Cir. 2003). The Government's request for rehearing was held in abeyance pending the Supreme Court's ruling in Jama v. Immigration and Customs Enforcement, 543 U.S. 335 (2005). In the wake of the Jama ruling that the Government had authority to remove individuals to Somalia without the necessity of obtaining the acceptance of the removal country's government, the Government moved to vacate the panel decision of the Ninth Circuit and

**ORDER ON MOTION RE:**
**PREVAILING PARTY STATUS - 3**

remand with instructions that this Court vacate the injunction, de-certify the class and reverse the order releasing the Petitioners from detention.

On August 26, 2005, the Ninth Circuit granted the unopposed request to vacate the injunction, but (citing the long history of logistical difficulties in deporting Jama himself) remanded to this Court the issue of whether or not Petitioners could be re-detained. Ali v. Ashcroft, 421 F.3d 795 (9th Cir. 2005); *see also* Jama v. Immigration and Customs Enforcement, No. Civ. 01-1172RTAJB, 2005 WL 1432280, *1 (D. Minn. April 7, 2005); Jama v. Immigration and Customs Enforcement, No. Civ. 01-1172RTAJB, 2005 WL 12205160, *7 (D. Minn. May 20, 2005).

Upon returning to this Court, the parties submitted a joint report in which they agreed that the injunction should be dissolved, the class decertified, and the detention claims of Petitioners dismissed without prejudice. Dkt. No. 161. The Court entered an order adopting the parties' requests. (Dkt. No. 163.)

Following the Court's granting of relief on the merits in January 2003, Petitioners had moved for an award of attorney fees under the EAJA (for their work billed through January 2003). (Dkt. No. 50.) The Government opposed the request on the ground that it was premature. Respondents' Opposition to E.A.J.A. Motion (Dkt. No. 55). This Court rejected that argument, found the application to be timely and (except for some of the requested paralegal fees) granted Petitioners their requested fees. May 27, 2003 Order (Dkt. No. 57). A motion for reconsideration was denied. July 30, 2003 Order (Dkt. No. 71). Both those orders were appealed by the Government, but the EAJA portion of the appeal was stayed while the decision on the appeal on the merits proceeded forward.

The briefing on the EAJA appeal commenced following the Ninth Circuit's reversal and remand. The Ninth Circuit remanded to this Court to determine whether Petitioners were still prevailing parties. The Government never maintained that an EAJA award was inappropriate because

**ORDER ON MOTION RE:**
**PREVAILING PARTY STATUS - 4**

1  its position was substantially justified (one of the grounds for denial of an EAJA attorney fee award),

2  and Petitioners never sought any fees for work done on this case beyond January 31, 2003.

**Analysis**

EAJA provides for the award of attorney fees and costs to a party in a civil action against the United States where that party is the prevailing party. *See* 38 U.S.C. § 2412(d)(1)(A). The burden is upon Petitioners, as the applicants for attorney fees, to establish "prevailing party" status. *See* <u>Reich v. King Plumbing and Heating</u>, 98 F.3d 147, 150 (4th Cir. 1996); <u>Shepard v. Sullivan</u>, 898 F.2d 1267, 1273 (7th Cir. 1990).

The statute does not define what the term "prevailing party" means. <u>Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health & Human Resources</u>, 532 U.S. 598 (2001), a leading case on the fee award issue, cites to the historical requirement of a "material alteration of the legal relationship of the parties" as a condition precedent of a "prevailing party" fee award and holds that "enforceable judgments on the merits and court-ordered consent decrees create" the requisite material alteration. <u>Id.</u> at 604. The <u>Buckhannon</u> court rejected the "catalyst theory" (under which a voluntary change in the parties' legal relationship as a result of filing a lawsuit would create a "prevailing party" award) on the ground that it lacked the critical factor of "judicial sanction." <u>Id.</u> at 605. The dual factors of (1) a material alteration in the parties' legal relationship that is (2) judicially sanctioned comprise the current test for whether a litigant is a "prevailing party." The issue here is whether the results of this litigation pass muster under that test.

The Government has urged the position that, under <u>Buckhannon</u>, "an irreversible, enforceable judgment on the merits is essential and non-dispensable to a party's claim to prevailing party status." Respondents' Opposition, p. 7. They want the Court to find that, because "Petitioners sought nothing less than the wholesale cessation of the U.S. Government's removal operations regarding Somalia" and failed to achieve that, Petitioners cannot be declared prevailing parties. <u>Id.</u> at p. 8. This is too

**ORDER ON MOTION RE:**
**PREVAILING PARTY STATUS - 5**

narrow a reading of the law, and too restrictive a view of Petitioners' efforts. Case law in the Ninth Circuit and elsewhere that developed in the wake of <u>Buckhannon</u> has not utilized this all-or-nothing approach and the Court declines to use such an approach here.

Even in <u>Buckhannon</u>, the Supreme Court discerned an underlying Congressional intent in the "prevailing party" fee-shifting statutes to "permit an <u>interim</u> award of counsel fees . . . when a party has prevailed on the merits of <u>at least some of his claims</u>." 532 U.S. at 604 (citations omitted) (emphasis supplied). In <u>Carbonell v. Immigration and Naturalization Service</u>, 429 F.3d 894 (9th Cir. 2005), the Ninth Circuit held that "[a] party need not succeed on every claim in order to prevail. Rather a plaintiff prevails if he has 'succeeded on any significant issue in litigation which achieved some of the benefit [he] sought in bringing suit.'" <u>Id.</u> at 900 n. 5. (citing <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist</u>, 489 U.S. 782, 791-92 (1989)).[1]

It is not necessary that a party who seeks to avoid removal actually succeed in that goal in order to achieve "prevailing party" status for EAJA purposes. The Tenth Circuit deemed a plaintiff who obtained an injunction prohibiting his deportation while his immigration claims were being litigated to be a prevailing party entitled to a fee award. <u>Kopunec v. Nelson</u>, 801 F.2d 1226, 1227 (10th Cir. 1986). The opinion in <u>Kopunec</u> does not state whether Plaintiff ever achieved his ultimate goal. What was significant to the court was that his reversal of an <u>automatic</u> visa revocation (equivalent to the automatic removal of Petitioners sought by the Government here) and his preliminary injunction against deportation "constitute[d] a substantial victory of his position significantly discrete from the ultimate conclusion to warrant separate treatment." <u>Id.</u> at 1229.

---

[1] In dicta that addresses the Government's interpretation of <u>Buckhannon</u>, the Ninth Circuit cited a number of cases which had rejected "overly narrow" interpretations of the case and had classified judgments and consent decrees as "only examples" of the kinds of judicial action required to convey "prevailing party" status. 429 F.3d at 898-99; citing <u>Watson v. County of Riverside</u>, 300 F.3d 1092, 1096 (9th Cir. 2002); <u>Tippington-Whittingham v. City of L.A.</u>, 316 F.3d 1058, 1062 (9th Cir. 2003).

**ORDER ON MOTION RE:**
**PREVAILING PARTY STATUS - 6**

1    In Vacchio v. Ashcroft, the Second Circuit conferred "prevailing party" status upon a
2 petitioner who obtained (via a habeas petition) his release from detention pending a determination of
3 his immigration status.  404 F.3d 663 (2nd Cir. 2005).   Although Vacchio did ultimately succeed in
4 his quest for cancellation of his removal, the appellate court (in awarding him "prevailing party" status
5 for the petition which resulted in his release from INS detention) rejected the lower court's
6 characterization of his relief as "retention of his lawful permanent resident status" and instead
7 identified his release from custody pending determination of his removal case as the relevant relief for
8 determination of whether he had "prevailed." Id. at 674.  Admittedly, in Vacchio it was only the
9 litigant's habeas petition (not the ultimate challenge to his removal) which was at issue, but this Court
10 rejects as inefficient and wasteful any argument that petitioning aliens must file separate actions to
11 obtain their release pending a ruling on their lawsuit to determine their removal status in order for their
12 counsel to qualify for attorney fee awards should they be successful in obtaining their release pendente
13 lite; i.e., while the action is pending.

14    The Court is aware that the circuits are not unanimous on the issue of whether injunctive relief
15 qualifies as an "enforceable judgment on the merits" sufficient to satisfy the Buckhannon test.  The
16 Tenth Circuit found that a preliminary injunction against deportation qualified the plaintiff for
17 "prevailing party" status in Kopunec.  See also Grano v. Barry, 783 F.2d 1104, 1108-09 (D.C. Cir.
18 1986) (where an injunction halting demolition of a historic building – which was eventually demolished
19 – was found to be a sufficiently "significant benefit" to entitle plaintiffs to an attorney fee award as
20 prevailing parties).  The Fourth Circuit, however, found that injunctive relief did not meet the
21 Buckhannon test, citing the "less stringent assessment of the merits of claims that are part of the
22 preliminary injunction context." Smyth v. Rivero, 282 F.3d 268, 277 (4th Cir. 2002).  Similarly, in
23 Northern Cheyenne Tribe v. Jackson, 433 F.3d 1083 (8th Cir. 2006), the Eighth Circuit held that "a
24 preliminary injunction that grants only temporary relief pendente lite is not, without more, a judicially

**ORDER ON MOTION RE:**
**PREVAILING PARTY STATUS - 7**

sanctioned <u>material</u> alteration of the parties' legal relationship within the meaning of <u>Buckhannon</u>." <u>Id.</u> at 1086 (emphasis in original).

But the Ninth Circuit has aligned itself with those courts willing to grant prevailing party status to litigants who achieve partial or injunctive relief, as illustrated by cases such as <u>Carbonell</u> and <u>Watson v. County of Riverside</u>, 300 F.3d 1092, 1093 (9th Cir. 2002) (which found that plaintiff's injunctive relief "satisfie[d] the prevailing party test" because the plaintiff "achieved some the benefit [he] sought in bringing the suit" and because "the injunction altered the legal relationship between the parties.").

The Court is cognizant of the language in <u>Watson</u> which noted that, on "occasions when the plaintiff scores an early victory by securing a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against him . . . [t]he plaintiff would not be a prevailing party. . ." 300 F.3d at 1096. While Petitioners lost on their 1231(b)(2) claim here, their "prevailing party" status is based on their results concerning their <u>Zadvydas</u> detention claims, an issue on which they did not lose (as their continued non-detention status attests).

This Court also notes that the <u>Buckhannon</u> opinion does not define what it means by an "enforceable judgment on the merits" and (despite the Government's fondness for the term in their briefing) nowhere requires that such judgment be "irreversible." A finding in favor of Petitioners as prevailing parties is further supported by the nature of the <u>Zadvydas</u> rule which underpins their release from detention. Inherent in any finding that a detainee may not be held if there is no likelihood of removal in the reasonably foreseeable future is the possibility that, at some point in the future, there <u>will</u> be a likelihood of removal.

In other words, <u>any</u> ruling made pursuant to <u>Zadvydas</u> is provisional and may be reversed at a later date upon a change of circumstances. The position which the Government urges upon this Court would result in a situation where no detainee who petitioned for, and obtained, release on <u>Zadvydas</u>

**ORDER ON MOTION RE:
PREVAILING PARTY STATUS - 8**

1  grounds would be entitled to prevailing party status and an attorney fee award. Such a result is not in

2  keeping with the rationale of Buckhannon or the current position of the Ninth Circuit on the

3  "prevailing party" issue. The fact that Petitioners remain out of custody at the present moment is

4  further evidence of their materially altered relationship with the Government.[2]

5      Petitioners sought the certification of a class of aliens subject to removal to Somalia, and a

6  judicial determination that the government of this country did not have the authority to remove the

7  members of that class to Somalia on the grounds that there was no governmental entity in that nation

8  to accept them. They failed in both of those objectives. But these four men, who had been detained

9  under removal orders by governmental authorities, also sought (1) relief from the threat of removal

10 and (2) release from custody while their immigration status was determined. First Amended

11 Complaint, pp. 7-8; Dkt. No. 8. In this they prevailed. Petitioners are prevailing parties for EAJA

12 purposes because they "succeeded on [a] significant issue in litigation which achieved some of the

13 benefit [they] sought in bringing suit," Carbonell, 429 F.3d at 900 n. 5 (citations omitted), and because

14 the government was "required to do something directly benefitting [Petitioners] that they otherwise

15 would not have had to do." Id. at 900. (citations omitted).

16     Respondents' singular focus on Petitioners' attempts to obtain the "wholesale cessation of the

17 U.S. Government's removal operations regarding Somalia" is misplaced because that is not the only

18 relief Petitioners sought through their lawsuit. Nor is the fact that the injunctive relief achieved by

19 Petitioners was eventually overturned fatal to their EAJA fee award request. It is the nature of

20 Zadvydas-based relief that it may not be permanent.

21     Following the Jama decision, the Government could have sought the re-detention and removal

22 of Petitioners; instead they joined Petitioners in a request to dismiss this action. Joint Status Report,

---

[2] This fact also distinguishes this case from the Eighth Circuit's Northern Cheyenne decision. The relief obtained by Petitioners here was not simply "temporary relief pendente lite;" the Government has not sought to re-detain the named aliens since the conclusion of this litigation.

**ORDER ON MOTION RE:**
**PREVAILING PARTY STATUS - 9**

Dkt. No. 161. Respondents challenge the significance of Petitioners' release from detention on the grounds that it was obtained "through an erroneous interpretation of 8 U.S.C. § 1231(b)(2)," an "error. . . compounded by the Court's conclusion that Petitioners' release was compelled by Zadvydas because there was no significant likelihood of their removal in the reasonably foreseeable future. . . ." Respondents' Opposition, p. 14.  However, the fact that the Government agreed to a dismissal of Petitioners' detention claims and has declined to pursue the re-detention or removal of these petitioners since the Jama decision invokes the Zadvydas standard of "no significant likelihood of removal in the reasonably foreseeable future."

Finally, the Government seeks denial of Petitioners' EAJA request on the ground that Petitioners Hundiye and Mohamud have failed to report to ICE as required and are currently on fugitive status.  They contend that the Court should invoke the "fugitive disentitlement doctrine," which holds that parties who are avoiding an action of the same court from whom they are seeking a benefit ought not be permitted to pursue such a claim for reasons of equity.  See Sapoundjiev v. Ashcroft, 376 F.3d 727, 729 (7th Cir. 2004); United States v. Eng, 951 F.2d 461, 465 (2nd Cir. 1991). Respondents cite the case of Zapon v. Dept. of Justice, 53 F.3d 283, 284 (9th Cir. 1995), in which an alien family that refused to comply with an order to surrender for deportation (even though the order was later invalidated) was denied EAJA fees.

This argument is not persuasive.  First, it has no relevance to the Court's analysis of whether Petitioners are prevailing parties for EAJA purposes.  Second, it does not address the issue of the remaining, non-fugitive aliens.  This matter presented nearly pure legal issues.  Counsel for Petitioners would have had to expend the same amount of analysis and preparation for this petition whether there was a single named petitioner or several.  The fugitive status of some but not all of the Petitioners has no bearing on this decision.

**ORDER ON MOTION RE:**
**PREVAILING PARTY STATUS - 10**

## Calculation of Fees

Having decided that Petitioners are prevailing parties under the EAJA and entitled to an award of attorney fees under the statute, the question remains: are Petitioners' counsel entitled to the <u>entire</u> amount that they were initially awarded following the grant of injunctive relief in January 2003? The answer to that question is "no." Having found that Petitioners are prevailing parties only to the extent that they secured their release from detention, the Court further finds that the current award should be reduced by the amount that represents the work related to the putative class issues of this action.

The award will be reduced by the amount of fees related to identification of a nation-wide class, preparation of pleadings in support of class relief, and the argument for class certification. Petitioners have proposed (and Respondents have not objected) that eliminating the hours of Thomas Boeder, Susan Foster, Sally Morgan and Erin Childress Tahkkar, as well as half the hours of the remaining attorneys and paralegal Kathy Riley would represent a deduction of the time fairly attributable to class issues. Gellert Decl. II, ¶ 4. Regarding costs, Petitioners are still entitled to the filing fee; however, Petitioners have advised that court and deposition transcripts were prepared primarily for discovery in support of class certification issues. <u>Id.</u> at ¶ 6. Based on the above representations, the Court orders that, in view of Petitioners prevailing on the issue of their detention, an award of $49,631.25 in attorneys' fees, $4,732.00 in paralegal fees and costs of $105.00 should be made to pro bono counsel in this matter. The fees and costs total is $54,468.25 and should be made payable to the law firm of Perkins Coie LLC; that payment is due within 30 days of this order.

## Respondents' Overlength Brief

Although the Court did grant Respondents' request to file an overlength brief, and did read and consider the analysis and argument contained in the extra pages of the Government's briefing, the fact remains that Respondents filed the additional material in violation of the Local Rule 7(e)(4) and did not request permission to do so until Petitioners objected in their reply brief. The Government will be

ORDER ON MOTION RE:
PREVAILING PARTY STATUS - 11

sanctioned $1,000.00 for this violation of the Local Rules, said amount to be payable to the Clerk of the Court within 30 days of the date of this order.

## Conclusion

As a result of filing this lawsuit, Petitioners obtained a preliminary and permanent injunction that resulted in their release from custody and relief from imminent removal to Somalia. Petitioners' mandated release from detention represents a material alteration in their legal relationship with the Government, and that alteration was judicially sanctioned by the Court's previous orders releasing Petitioners and the final approval of the parties' joint request for dismissal of Petitioners' detention claims. On that basis, they are prevailing parties for purposes of EAJA and entitled to an award of attorney fees and costs. The Court orders entry of an award of $54,468.25 in fees and costs, commensurate with the work attributable to Petitioners' release from custody, payable to Perkins Coie LLC within 30 days of the date of this order.

For their violation of Local Rule 7(e)(4), Respondents will be assessed a sanction of $1,000.00, payable to the Clerk of the Court within 30 days of the date of this order.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: March _30__, 2007.

_____
Marsha J. Pechman
U.S. District Judge

**ORDER ON MOTION RE:**
**PREVAILING PARTY STATUS - 12**